UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KYLE J. PERRY, | ) | 1:15CV2601 |
| | ) | |
| Petitioner | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| MARGARET BRADSHAW, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | <u>RECOMMENDATION</u> |

McHARGH, MAG. JUDGE

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is the petition of Kyle J. Perry for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence[1] in the case of *State of Ohio v. Perry*, Case No. 10-CR-00730 (Lake County March 20, 2014).  (Doc. 7, RX 92.)  For the following reasons, the magistrate judge recommends that the petition be denied.

Perry filed a petition pro se for a writ of habeas corpus arising out of his 2011 convictions for multiple counts of burglary, receiving stolen property, and other

---

[1]  The petition cites Perry's original 2011 sentencing.  (Doc. 1, § 2(b); *see* doc. 7, RX 27 (judgment entry of sentencing, Aug. 18, 2011).)  However, on remand from his appeal, Perry was re-sentenced on March 20, 2014, and it is this judgment under which Perry is held in custody.  (Doc. 7, RX 92.)

crimes, in the Lake County (Ohio) Court of Common Pleas.  In his petition, Perry

raises four grounds for relief:

> 1.  Petitioner's Sixth Amendment jury trial rights were violated when
> the [trial] court denied repeated requests to appoint new counsel or
> allow petitioner to represent himself.
>
> 2.  Petitioner was denied the due process protections of the Fourteenth
> Amendment when the trial court denied his motion to suppress
> evidence obtained in violation of the Fourth Amendment without
> considering all of the facts concerning the illegal search and seizure.
>
> 3.  Petitioner was denied his Sixth Amendment jury trial right to a fair
> and impartial trial when the trial court denied his motion in limine
> regarding evidence related to cell phone triangulation.
>
> 4.  The trial court erred by sentencing petitioner to a term of
> imprisonment contrary to statute when the findings were not
> supported by the record.

(Doc. 1, § 12.)  The respondent has filed a Return of Writ (doc. 7), and the petitioner

has filed a Traverse (doc. 9).


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural

background:

> Appellant [Perry] was implicated in a series of burglaries after stolen
> items were recovered from automobiles during two respective
> warrantless searches.  As the investigation unfolded, additional
> incriminating items were later recovered in appellant's temporary
> residence at the Mosley Select Suites Hotel after a search warrant for
> the premises was executed.
>
> A 14–count indictment was filed against appellant, charging him with
> the following: five counts of burglary, second-degree felonies in

violation of R.C. 2911.12(A)(2), with a firearm specification attached to one count; three fifth-degree felony counts of receiving stolen property, in violation of R.C. 2913.51(A); two fourth-degree felony counts of receiving stolen property, in violation of R.C. 2913.51(A), each with firearm specifications attached; three counts of having weapons under disability, third-degree felonies in violation of R.C. 2923.13(A)(2), each with firearm specifications attached; and one count of engaging in a pattern of corrupt activity, a first-degree felony in violation of R.C. 2923.32(A)(1).

Soon thereafter, appellant filed a multitude of pre-trial motions.  First, appellant filed multiple motions to suppress, arguing that the evidence obtained during the automobile searches on May 22, 2010, and July 20, 2010, should have been suppressed.

During the hearing on the motions, Officer Steven Shum of the Wickliffe Police Department testified concerning the automobile search on May 22, 2010.  Officer Shum explained that he initiated a traffic stop around 1:00 a.m. of an automobile which failed to display a rear license plate.  Appellant was the driver of the automobile and one Jimmie Ivery was the passenger.  Officer Shum testified he had familiarity with both appellant and Ivery, as he knew they were both involved in at least one prior burglary.  As Officer Shum inquired about the status of a rear license plate, he detected a "strong odor" of marijuana from inside the car.  Based on the strong odor, and after back-up arrived, Officer Shum asked the occupants to step out of the vehicle so that an automobile search could be executed.  During the search, Ivery admitted that he had been smoking marijuana earlier that day in response to what would be found in the cabin and whether anyone had been smoking.  Officer Shum noted that Ivery denied that any marijuana was in the car.  The search uncovered "little tiny bits" of what Officer Shum believed to be marijuana located on the floor in front of the passenger seat.  Officer Shum testified the amount was so small it was immeasurable.  The officer observed dark gloves, a black stocking cap, and two pairs of shoes in the back seat area. Additionally, the officer noted that the occupants were wearing dark dress pants and the dome light of the automobile had been removed.  A search of Ivery also uncovered two blue plastic pen lights.

Based on his suspicions, which arose from the marijuana residue, the strong odor, Ivery's admission, the missing rear license plate, the removed dome light, and the dark clothing, Officer Shum proceeded to open and search the trunk of the automobile, suspecting that more

3

criminal activity was afoot.  In the trunk, Officer Shum did not find drugs but did find "burglary tools," including pry bars, a sledge hammer, a ball-joint tool, a duffle bag, a ski mask, ear warmers, and another set of gloves.  The license plate and several screws were also located in the truck [sic], casting doubt on appellant's excuse that he had no screws to affix the plate to his car.  More importantly, a Toshiba laptop computer, a pair of binoculars, a Minolta digital camera, and an Olympus digital camera were uncovered.  Officer Shum explained that, at that point, he believed the electronics were "probably stolen"; thus, he seized the electronic equipment and tools for further investigation.  Appellant and Ivery were sent on their way.

Officer Isaac Petric of the Wickliffe Police Department testified to the second stop on July 20, 2010, at 2:40 a.m. Officer Petric testified he saw Ivery driving a vehicle.  Officer Petric had a familiarity with Ivery due to his past dealings with law enforcement.  Officer Petric ran Ivery's name through dispatch, and it was discovered that Ivery's license was suspended.  As a result, Officer Petric initiated a stop. Ivery, driving appellant's vehicle, pulled into the Mosley Select Suites, where appellant happened to be staying.  Ivery pulled into an aisle of the parking lot, but not into a parking space.  Soon after the stop, Officer Petric confirmed through dispatch that Ivery had a warrant out for his arrest.  After Ivery was placed under arrest, the decision to impound the vehicle was made.  Officer Shum arrived on scene and executed an inventory search of the automobile, finding a plastic bag containing jewelry.  At some point, appellant, apparently recognizing his car in the front parking lot, exited the hotel from the lobby area and inquired into the stop and the status of his automobile.  Officer Petric informed him that his car was being towed and the driver had been arrested.

Upon consideration, the trial court denied appellant's motions to suppress.

The matter proceeded to a jury trial.  After four days of testimony, the jury found appellant guilty on all 14 counts and each respective specification.  Appellant was sentenced to a total of 21 years in prison.

(Doc. 7, RX 33, at 2-5; State v. Perry, No. 2011-L-125, 2012 WL 5195814, at *1-*2

(Ohio  Ct. App. Oct. 22, 2012).

4

## A.  Direct Appeal

Perry filed a timely appeal, and raised the following seven assignments of error:

> 1.  Defendant-appellant was denied effective assistance of counsel by the trial court which inured to his prejudice at trial.
>
> 2. The trial court committed prejudicial error by denying Defendant-Appellant's Motion to Suppress regarding the search of the vehicle's truck [sic] on May 22, 2010.
>
> 3.  The trial court committed prejudicial error by denying Defendant-Appellant's Motion to Suppress regarding the pre-textual tow and inventory of the vehicle stopped on July 20, 2010.
>
> 4.  The trial court committed prejudicial error by denying Defendant-Appellant's Motion in Limine regarding the State's use of expert testimony regarding triangulation pinpointing with cell phone towers in contradiction of Ohio Criminal Rule 16(k), and by allowing such testimony at trial.
>
> 5.  The evidence adduced at trial was insufficient to support a conviction of Defendant-Appellant.
>
> 6.  The trial court committed prejudicial error by sentencing Defendant-Appellant without proper consideration of allied offenses of Engaging in a Pattern of Corrupt Activity, Burglary, Receiving Stolen Property, and Weapons under Disability.
>
> 7.  The trial court committed prejudicial error by sentencing Defendant-Appellant without proper calculation of credit for time served.

(Doc. 7, RX 29.)  The court of appeals affirmed the judgment of the trial court, on Oct. 22, 2012.  (Doc. 7, RX 33; Perry, 2012 WL 5195814.)

5

On Feb. 1, 2013, Perry filed a motion for delayed appeal to the Supreme Court of Ohio.  (Doc. 7, RX 36.)  The state supreme court granted leave to appeal (doc. 7, RX 37), and Perry subsequently raised the following five propositions of law:

1.  The Sixth Amendment to the United States Constitution guarantees a person charged to a criminal offense the inalienable right to counsel of choice and substitution of counsel and to pro se self-representation upon timely request to the court, and denial may result in structural error mandating automatic reversal of the conviction.

2.  It is an Abuse of Discretion when the Fourteenth Amendment does not permit an illegal search and seizure of property contained in a truck [sic] of a vehicle and results without an arrest or custodial holding and any evidence seized is inadmissible.

3.  It is an abuse of discretion and clearly established federal law governing illegal search and seizure and incorporated in Proposition of Law No. II herein and throughout warrants a de novo review.

4.  It is an abuse of discretion when records involving telephone messages are not secure by the owner of the cellphone and permission without a warrant issued in constitutional mandates.

5.  Insufficient claims mandate a total review and the abuse of discretion by the Appellate Panel of Judges resulted in violation of clearly established federal law through misapplication of Ohio Revised Code Section 2923.32(A)(1) with Incorrect definition on "Enterprise" and/or "Pattern of Corrupt Activity" as defined in Revised Code Section 2923.31(C) and/or (E), and the decision must be remanded for relief or dismissal of offenses.

(Doc. 7, RX 38.)

After the parties briefed their positions, the state supreme court declined to accept jurisdiction of the appeal on July 24, 2013.  (Doc. 7, RX 40; State v. Perry, 136 Ohio St.3d 1450, 991 N.E.2d 257 (2013).)

## B.  Rule 26(B) Application to Reopen Appeal

On Jan. 18, 2013, Perry filed a Rule 26(B) application to reopen his appeal of

his conviction.  Perry argued his appellate counsel was ineffective, and raised the

following assignments of error:

> 1.  The trial court violated Mr. Perry's rights to due process and  a fair
> trial when, in the absence of sufficient evidence, the trial court
> convicted Mr. Perry of engaging in a pattern of corrupt activity under
> R.C. 2923.32(A)(1), in violation of Mr. Perry's Fifth, Sixth, and
> Fourteenth Amendment rights under the United States Constitution,
> and Article I, Section 16 of the Ohio Constitution.
>
> 2.  The trial court committed reversible error when it entered a
> judgment of conviction against Mr. Perry for first-degree-felony
> engaging in a pattern of corrupt activity, in violation of R.C. 2945.75,
> and in violation of Mr. Perry's rights to due process under the
> Fourteenth Amendment to the United States Constitution, and Article
> I, Section 16 of the Ohio Constitution.

(Doc. 7, RX 41.)  The state agreed that Perry's appeal should be re-opened on the

basis of the second ground.  (Doc. 7, RX 42, at 4-5.)

The court of appeal concurred, finding that there was a genuine issue as to

whether Perry was deprived of effective assistance of counsel on that basis.  (Doc. 7,

RX 43.)  The court of appeals granted re-opening on the sole issue of "whether

appellate counsel was ineffective for failing to raise a violation of R.C. 2945.75(A)(2)

in the prior appeal."  (Doc. 7, RX 43, at 2.)

In his subsequent merits brief, Perry raised the following assignments of

error:

> 1.  The trial court committed reversible error when it entered a
> judgment of conviction against Mr. Perry for first-degree-felony

7

engaging in a pattern of corrupt activity, in violation of R.C. 2945.75, and in violation of Mr. Perry's rights to due process under the Fourteenth Amendment to the United States Constitution, and Article I, Section 16 of the Ohio Constitution.

2.  By failing to raise on Mr. Perry's behalf an assignment of error arguing that the trial court committed reversible error when it entered a judgment of conviction against Mr. Perry for first-degree-felony engaging in a pattern of corrupt activity, in violation of R.C. 2945.75, original appellate counsel provided Mr. Perry with ineffective assistance of counsel, in violation of the Fourteenth Amendment to the United States Constitution.

(Doc. 7, RX 44.)

The court of appeals found that the jury verdict forms were faulty, and that the first degree felony conviction was improper.  The case was remanded for the court to enter a conviction for second-degree felony engaging in a pattern of corrupt activity, and to resentence him on that count.  (Doc. 7, RX 46; State v. Perry, No. 2011-L-125, 2013 WL 6871131 (Ohio Ct. App. Dec. 31, 2013).)

## C.  Appeal of Re-Sentencing

Perry was re-sentenced on March 20, 2014, reducing his sentence from 21 years imprisonment, to 19 years imprisonment.  (Doc. 7, RX 92.)  Perry appealed his resentencing, raising a single assignment of error:

The trial court erred by sentencing the Defendant-Appellant to a term of imprisonment contrary to statute and where its findings were not supported by the record.

(Doc. 7, RX 94.)  The court of appeals found there was no error in his sentencing, and affirmed the judgment below, on Dec. 22, 2014.  (Doc. 7, RX 96.)  Perry did not appeal this decision to the state supreme court.

8

### D.  Second Rule 26(B) Application to Reopen

On Apr. 27, 2015, Perry filed an untimely application to reopen his appeal for good cause.  Perry stated that his application was untimely because he was not notified of the court's Dec. 22, 2014, ruling until March 20, 2015.

Perry argued his appellate counsel was ineffective, and raised the following assignments of error, verbatim:

> 1.  Appellate counsel rendered ineffective assistance of counsel on appeal when counsel failed to raise a "conflict of interest" and "ineffective assistance of counsel" claim on appeal violating appellant's 5th, 6th, and, 14th Amendment's to the United States Constitution.
>
> 2.  Appellate counsel rendered ineffective assistance of counsel on appeal when counsel failed to raise a claim that the trial court erred when denying appellant's request to proceed in pro-se and failed to sufficiently inquire into appellant's request pursuant to, Faretta v. California, 422 U.S. 806 (1975), violating appellant's fundamental constitutional rights under the Due Process Clause and right to effective assistance of counsel guaranteed under the 5th, 6th, and 14th Amendment's to the United States Constitution.
>
> 3.  Appellate counsel rendered ineffective assistance of counsel when counsel failed to raise a claim of error on appeal regarding the trial court's error in failing to properly instruct the jury on Count 14, regarding the "enterprise" element of engaging in a pattern of corrupt activity violating appellant's fundamental constitutional rights under the Due Process Clause and right to effective assistance of counsel guaranteed under the 5th, 6th, and 14th Amendment's to the United States Constitution.
>
> 4.  Appellate counsel rendered ineffective assistance of counsel when counsel failed to raise a claim on appeal that challenged the trial court's judgment entry and sentencing when the trial court failed to adequately inform appellant of the consequences of violating his post-release control that a violation of post-release control could result in the trial court imposing additional sentence of up to one-half of the sentence previously imposed.

9

(Doc. 7, RX 98.)  The court of appeals considered his untimely application, in the interests of justice, but denied the application to reopen.  (Doc. 7, RX 101.)  Perry did not appeal that decision further.

### E.  Motions for Jail Time Credit

Perry also filed two motions for jail time credit (doc. 7, RX 102, 104), but these motions are not germane to the grounds of the petition for habeas corpus, and need not be addressed here.

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-413 (2002).  See also Lorraine v. Coyle, 291
F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court
precedent "if the state court applies a rule that contradicts the governing law set
forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v.
Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court
considers the state decision to be erroneous or incorrect.  Rather, the federal court
must determine that the state court decision is an objectively unreasonable
application of federal law.  Williams, 529 U.S. at 410-412; Lorraine, 291 F.3d at
422.

## III.  FIRST GROUND:  SIXTH AMENDMENT RIGHT TO COUNSEL

The first ground of the petition is:  "Petitioner's Sixth Amendment jury trial
rights were violated when the [trial] court denied repeated requests to appoint new
counsel or allow petitioner to represent himself."

On direct appeal, Perry's first assignment of error was:  "Defendant-appellant
was denied effective assistance of counsel by the trial court which inured to his
prejudice at trial."  (Doc. 7, RX 29, at 13.)  He first set out the elements of a claim of
ineffective assistance of counsel.  Id.  He then shifted his argument, to assert that

11

the trial court abused its discretion in failing to grant his several requests to

appoint new (substitute) counsel.  Id. at 13-15.

The state court of appeals addressed his claim by first setting out the proper

standards for assessing a claim of ineffective assistance.  (Doc. 7, RX 33, at 24;

Perry, 2012 WL 5195814, at *12, citing State v. Bradley, 42 Ohio St.3d 136, 538

N.E.2d 373 (1989) (syllabus); and Strickland v. Washington, 466 U.S. 668 (1984).)

The court then noted that Perry had combined a claim that his motion(s) to appoint

new counsel should have been granted, and ruled:

> "Decisions relating to the substitution of counsel are within the sound
> discretion of the trial court." State v. Jones, 91 Ohio St.3d 335, 343,
> 744 N.E.2d 1163 (2001), citing Wheat v. United States, 486 U.S. 153,
> 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).  In Jones, the Ohio
> Supreme Court set forth several factors to consider in weighing
> whether a trial court abused its discretion in denying a motion to
> substitute counsel.  Id. at 342.  These factors include " 'the timeliness
> of the motion; the adequacy of the court's inquiry into the defendant's
> complaint; and whether the conflict between the attorney and client
> was so great that it resulted in a total lack of communication
> preventing an adequate defense.' " Id., quoting United States v.
> Jennings, 83 F.3d 143, 148 (C.A.6, 1996).
>
> Here, it is clear from the record appellant harbored feelings of
> suspicion and, at times, animosity toward his appointed trial counsel,
> an attorney with the Lake County Public Defender's Office.  As a
> result, appellant filed two pre-trial notices of ineffective assistance and
> a motion to disqualify or substitute counsel.  However, many of these
> suspicions seemed to be mildly alleviated by the trial court, and at one
> point, appellant affirmed on the record he was satisfied with trial
> counsel's work in the latest motion to suppress.  The trial court went to
> great lengths to explore the relationship between appellant and his
> trial counsel.  The trial court held two hearings on the motions on May
> 5, 2011, and July 8, 2011.  There, appellant explained to the trial court
> his dissatisfaction with counsel, including his belief that trial counsel
> did not review the discovery.  Appellant also requested either he

represent himself pro se, or that the attorney who represented him in a separate Cuyahoga County case represent him again.  During the hearing, the trial court conducted an extensive inquiry into each of appellant's complaints and the overall relationship between appellant and his trial counsel.

Ultimately, the trial court was satisfied that trial counsel was providing suitable representation.  Trial counsel had filed multiple motions to suppress, including at least one motion solely at the behest of appellant.  The trial court explained to appellant the serious and likely detrimental nature of pro se criminal representation at the trial level, including the overwhelming complexities of various criminal legal doctrines and the danger of conflating questioning with testimony, raising potential Fifth Amendment quagmires. Additionally, given the overwhelming scope of the case (ultimately 33 witnesses were called at trial), the trial court opined that any new counsel, such as the requested attorney from Cuyahoga County, would have difficulty preparing for trial in a short amount of time, whereas trial counsel was already familiar with the case from arguing the various motions.

Appellant additionally argues his trial counsel was ineffective during his trial for multiple reasons.  First, appellant contends there was a complete lack of trust and confidence throughout the attorney-client relationship which undermined his ability to participate in the defense.  However, appellant does not demonstrate how he was prejudiced in any way during trial from this representation.  For instance, appellant contends trial counsel was unprepared to cross-examine the state's witness on a critical point regarding cell phone location.  The record does not support this assertion.  As explained above, trial counsel cross-examined Mr. Mouse in an effort to undercut the cell phone triangulation process.  In fact, the record indicates that trial counsel elicited counter-points on cross-examination from multiple witnesses.  Further, appellant argues his trial counsel failed to call a known witness regarding cell phone triangulation.  Again, this position is not supported by the record. Rather, as explained above, trial counsel indicated that he did contact a prospective expert witness but did not believe the witness would provide any helpful testimony.

Appellant's first assignment of error is without merit.

(Doc. 7, RX 33, at 24-27; Perry, 2012 WL 5195814, at *12-*14.)

13

Perry appealed this decision, in part, in his delayed appeal to the Supreme Court of Ohio.  He did not pursue the ineffective assistance claim, but his first proposition of law was:

> 1.  The Sixth Amendment to the United States Constitution guarantees a person charged to a criminal offense the inalienable right to counsel of choice and substitution of counsel and to pro se self-representation upon timely request to the court, and denial may result in structural error mandating automatic reversal of the conviction.

(Doc. 7, RX 38.)  As noted earlier, after the parties had briefed their positions, the state high court declined to accept jurisdiction of the appeal.  (Doc. 7, RX 40; Perry, 136 Ohio St.3d 1450, 991 N.E.2d 257.)

## A.  Procedural Default

The respondent argues that any sub-claim contending that the state court denied Perry's right to self-representation under Faretta v. California, 422 U.S. 806 (1975), has been procedurally defaulted.  (Doc. 7, at 20.)

A habeas claim may be procedurally defaulted in two distinct ways.  First, by failing to comply with state procedural rules.  Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006) (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)).  Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process.  Williams, 460 F.3d at 806 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)).   The respondent argues that Perry's claims were not properly exhausted in state court.

14

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845.  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.  Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing Buell, 274 F.3d at 349).

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the

petitioner must demonstrate that there was cause for him not to follow the

procedural rule, and that he was actually prejudiced by the alleged constitutional

error.  Buell, 274 F.3d at 348 (citing Maupin, 785 F.2d at138); Jacobs v. Mohr, 265

F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

### 1.  Right to Self-Representation

Here, the respondent points out the Perry did not raise, on direct appeal, a

claim that the state court denied Perry's right to self-representation.  The record

reflects that Perry failed to properly exhaust this claim by raising it on direct

appeal.  See doc. 7, RX 29.  Because the claim was not raised in the state court of

appeals, it is barred by the Ohio rule of res judicata.  Lott v. Coyle, 261 F.3d 594,

611-612 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002); Rust, 17 F.3d at

160-161; State v. Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); State

v. Perry, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9).  Res

judicata would bar Perry from litigating an issue that could have been raised on

direct appeal.  Perry, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

Although Perry attempted to raise this claim in his appeal to the Supreme

Court of Ohio (see doc. 7, RX 38), that court will not consider a constitutional

question which was not raised and argued in the lower courts.  Leroy v. Marshall,

757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); Adams, 484 F.Supp.2d

at 769; City of Wooster v. Graines, 52 Ohio St.3d 180, 185, 556 N.E.2d 1163, 1168

(1990) (citing cases); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352

(1971).  Perry can no longer raise this claim in state court, as it would be barred on the basis of res judicata.  Leroy, 757 F.2d at 99; Perry, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

### 2.  Ineffective Assistance

The respondent also argues that Perry's ineffective assistance of counsel sub-claim(s) have been procedurally defaulted.  (Doc. 7, at 22-26.)  Perry did raise a claim of ineffective assistance of trial counsel, based on several grounds, before the state court of appeals.  See generally doc. 7, RX 29, at 13-15.

However, in pursuing his appeal before the Supreme Court of Ohio, Berry raised the following proposition of law:

> The Sixth Amendment to the United States Constitution guarantees a person charged to a criminal offense the inalienable right to counsel of choice and substitution of counsel and to pro se self-representation upon timely request to the court, and denial may result in structural error mandating automatic reversal of the conviction.

(Doc. 7, RX 38.)  On its face, this would not appear to raise a claim of ineffective assistance of trial counsel for the state high court's consideration.

The respondent, searching the supporting brief, finds possible support for such a claim in Perry's argument on the substitution of counsel issue, that ". . . the breakdown of the attorney-client relationship . . . jeopardized the appellant's right to effective assistance of counsel."  (Doc. 7, at 24, quoting RX 38, at [4], citing Strickland.)  The respondent contends that this glancing mention of Strickland does

17

not suffice to fairly present the state court with a constitutional claim.  (Doc. 7, at 25.)

The respondent points out that, to exhaust a federal claim, the petitioner must recite both the factual and federal constitutional basis for the claim.  (Doc. 7, at 25, citing Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Gray v. Netherland, 518 U.S. 152, 163 (1996).)   The respondent notes that merely invoking a constitutional phrase is not sufficient to fairly present the claim.  Id., citing Gray, 518 U.S. at 163; Slaughter v. Parker, 450 F.3d 224, 236 (6th Cir. 2006); Rosa v. McCray, 396 F.3d 210, 217 (2d Cir. 2005), and other cases.

The court agrees.  Perry failed to exhaust his ineffective assistance of trial counsel by giving the highest court in the state a full and fair opportunity to rule on the claim.  O'Sullivan, 526 U.S. at 845; Rust, 17 F.3d at 160.  Perry cannot return to state court to exhaust the claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata.  State v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998).  See generally Leroy, 757 F.2d at 99.

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  Williams, 460 F.3d at 806 (citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982)).  Where state court

18

remedies are no  longer available to the petitioner, procedural default and not exhaustion bars habeas review.  Id.  Where the petitioner fails to demonstrate cause and prejudice to excuse the default, the claim is barred.  Id. at 807.  Perry has made no showing of cause and prejudice.  See generally doc. 9.

### B.  State Court Abuse of Discretion Not a Federal Claim

The respondent also contends that any sub-claim arguing that the trial court abused its discretion is not a basis for federal habeas relief.  (Doc. 7, at 21; see doc. 1, at [13].)

An alleged abuse of discretion by the state trial court, without more, is not a constitutional violation.  Stanford v. Parker, 266 F.3d 442, 459 (6th Cir. 2001), cert. denied, 537 U.S. 831 (2002) (citing Sinistaj v. Burt, 66 F.3d 804, 808 (6th Cir. 1995)).  When the court's decision results in an alleged violation of the defendant's constitutional rights, the court will examine the underlying issue.  Sinistaj, 66 F.3d at 808; Carnail v. Bagley, No. 1:02CV1411, 2006 WL 1876546, at *12 (N.D. Ohio July 3, 2006).

On direct appeal, Perry did not claim that the trial court's alleged abuse of discretion resulted in a constitutional violation.  (Doc. 7, RX 29, at 13-15.)  In addition, the Supreme Court has pointed out that the right to counsel of choice does not extend to defendants who require appointed counsel.  United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006) (citing Wheat v. United States, 486 U.S.

19

153, 159-160 (1988); Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624, 626 (1989).)  The petition should not be granted on the basis that the trial court abused its discretion.

For the several reasons outlined above, the petition should not be granted on the basis of the first ground.


## IV.  FOURTH AMENDMENT CLAIM

The second ground of the petition is:

> Petitioner was denied the due process protections of the Fourteenth Amendment when the trial court denied his motion to suppress evidence obtained in violation of the Fourth Amendment without considering all of the facts concerning the illegal search and seizure.

The respondent asserts that the Fourth Amendment claim is not cognizable in federal habeas review.  (Doc. 7, at 33.)

The United States Supreme Court held in *Stone v. Powell* that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Abdul-Mateen v. Hofbauer*, 215 F.3d 1325, 2000 WL 687653, at *3 (6th Cir. 2000) (TABLE, text in WESTLAW), *cert. denied*, 531 U.S. 933 (2000) (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1976)); *Moore v. Wilson*, No. 5:07CV0537, 2008 WL 3852141, at *3 (N.D. Ohio Aug. 18, 2008).  Although *Stone* predates the AEDPA, it continues to govern Fourth Amendment habeas claims.

20

*Smith v. Bradshaw*, No. 5:04CV1235, 2006 WL 2233211, at *4 (N.D. Ohio Aug. 3, 2006).

In applying *Stone*, the district court considers two factors. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982). First, does the state provide a procedure which gives the petitioner an opportunity to raise a Fourth Amendment claim? The Sixth Circuit has ruled that Ohio's procedures are adequate in this regard. *Riley*, 674 F.2d at 526; *see also Moore*, 2008 WL 3852141, at *7 (citing *Riley*); *Smith*, 2006 WL 2233211, at *4. Ohio Criminal Rule 12 provides an opportunity to raise Fourth Amendment claims through a pretrial motion to suppress. *Riley*, 674 F.2d 526. A criminal defendant who has unsuccessfully moved to suppress has the opportunity to take a direct appeal of that order. *Id.*

The second factor is whether presentation of the Fourth Amendment claim was frustrated because of a failure of the state's procedures. *Riley*, 674 F.2d at 526; *Smith*, 2006 WL 2233211, at *3. This inquiry is "not meant to be a case by case review of state court determinations." *Abdul-Mateen*, 2000 WL 687653, at *3. The Southern District of Ohio recently noted:

> Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts.

*Graham v. Warden, Chillicothe Corr. Inst.*, No. 1:10CV616, 2011 WL 3941615, at *6 (S.D. Ohio July 22, 2011); *see also Abdul-Mateen*, 2000 WL 687653, at *3 (inquiry is review of whether state provided adequate mechanism to address Fourth Amendment claims).  An independent and adequate state procedural ground may legitimately serve to frustrate a petitioner's opportunity to raise a Fourth Amendment claim.  *Riley*, 674 F.2d at 526 n.3.

Perry used the opportunity to raise his Fourth Amendment claims through the procedures provided by the State of Ohio, as set forth above.  Perry filed several motions to suppress, and appealed the denial to the state court of appeals.  *See* doc. 7, RX 18, and RX 33; *Perry*, 2012 WL 5195814.  As noted by the Sixth Circuit:  "All that *Stone v. Powell* requires is an 'opportunity' for full and fair consideration of the claim for suppression; it is up to the claimant and his counsel to decide what use, if any, is to be made of the opportunity."  *Jennings v. Rees*, 800 F.2d 72, 77 (6th Cir. 1986); *see also Cowans v. Bagley*, 624 F.Supp.2d 709, 797 (S.D. Ohio 2008), *aff'd*, 639 F.3d 241 (6th Cir. 2011) (quoting *Jennings*).

The petition should not be granted on the second ground of the petition, which is barred under the application of *Stone v. Powell*.  *Stone*, 428 U.S. at 494; *Riley*, 674 F.2d at 526.

## V.  EVIDENTIARY RULING

The third ground of the petition is:

Petitioner was denied his Sixth Amendment jury trial right to a fair and impartial trial when the trial court denied his motion in limine regarding evidence related to cell phone triangulation.

On direct appeal, Perry framed his claim as a violation of Ohio Criminal Rule 16(k), and that the trial court's ruling was an abuse of discretion.  (Doc. 7, RX 29, at 22.)  The state court of appeals addressed his claim as follows:

> In his fourth assignment of error, appellant takes particular exception to the testimony of AT & T Radio Engineer Joseph R. Mouse. Appellant argues Mr. Mouse offered an expert opinion regarding the approximate whereabouts of a certain cell phone at the time of the various thefts.  Such an opinion was not proper and should have been excluded, appellant contends, because it was in direct contravention to Crim.R. 16(K).  The rule requires a written report to be filed 21 days before trial, "summarizing the expert witness's testimony, findings, analysis, conclusion, or opinion, and shall include a summary of the expert's qualifications." Crim.R. 16(K).  As Mr. Mouse was deemed a fact witness, no such report was filed in this case.  The purpose of the rule is to avoid unfair surprise by providing notice to the defense and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report.
>
> Evid.R. 702 provides:
>
>> A witness may testify as an expert if all of the following apply:
>>
>> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>>
>> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>>
>> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information[.]

23

A trial court's evidentiary rulings are reviewed under an abuse of discretion standard.  State v. Poling, 11th Dist. No.2008–A–0071, 2010–Ohio–1155, ¶ 19, citing State v. Sweeney, 11th Dist. No.2006–L–252, 2007–Ohio–5223, ¶ 22.  Even where a court abuses its discretion in the admission of evidence, we must review whether the defendant suffered material prejudice due to the ruling.  Id.

The trial testimony of Mr. Mouse placed a phone number ending in "6676" in the general vicinity of the theft offenses at particular times. This was accomplished by reviewing the date and time a call was placed, then determining which cell-phone tower provided the service; a method known as "triangulation." The phone number on the account was listed to one Lisa Reed, which was ultimately linked to Ivery's phone—not appellant's.  This very point was elicited on cross-examination by trial counsel.  Thus, this portion of the trial testimony placed Ivery's phone in the vicinity of the theft offenses in support of the alternative complicity charges.  As appellant was seen, at times, with one identified as Ivery during the commission of the theft offenses, the presence of Ivery's phone could have directly implicated appellant.  Thus, to this extent, the question of whether the testimony was properly admitted should be considered.

Here, the trial court determined Mr. Mouse was "an expert in so far as he possesses knowledge outside the realm of the normal juror." However, the trial court ultimately concluded that Mr. Mouse was "testifying as to factual matters rather than opinion matters" and that such testimony was not unduly prejudicial.  After a review of the record, we determine that this finding was not an abuse of discretion, and the testimony was properly admitted.

First, the record reflects, and trial counsel acknowledged, that the state previously disclosed via supplemental discovery that it intended to call witnesses to testify concerning the authenticity of the cell phone records and also provide technical insights into how cell phones operate in conjunction with different tower sites to provide geographical information.  The record indicates, and trial counsel acknowledged, that these records were made available to him.  Thus, appellant was effectively put on notice as to the nature of the testimony.

Next, a review of the testimony indicates that Mr. Mouse did not make independent findings, nor did he form a conclusion or opinion about

the reliability of triangulation.  Mr. Mouse testified to how a cell phone works, how the device utilizes nearby towers for connectivity, and how the service provider records this information.  This testimony constituted general background information interpreting cell phone records.  Mr. Mouse additionally explained different numbering codes in the phone records and also identified calls on the records to their corresponding cell phone towers.  Again, Mr. Mouse simply interpreted records and explained the general method by which the service provider uses nearby towers to place calls.  That is, Mr. Mouse factually explained the contexts of the complex and detailed phone records.  Mr. Mouse then simply compared the locations on the phone records to locations on the tower site maps by matching the relevant numbers recorded by the service provider.  Any layperson could make this  determination by examining the respective exhibits—it did not require the use of an expert.  Further, on cross-examination, trial counsel elicited the points that the phone was not registered to appellant, and above all, the location of a device bears no relation to the location of an individual person, but only a rough approximation.

Finally, trial counsel during sidebar also acknowledged that he contacted a prospective expert witness concerning the use of cell phone towers to determine a person's location.  Trial counsel explained that he was unable to properly summarize the immense information (hundreds of pages of cellular phone records) to formulate an understandable question.  However, trial counsel also explained the following: "I could not, from the conversation that I had [with the prospective expert], elicit from him in my opinion testimony that on the whole, cell phone tracking technology is unreliable."

Parenthetically, we note that witness Angela Lott, a customer representative with Verizon Wireless, testified concerning appellant's cell phone records.  Appellant does not object to this witness's testimony in his merit brief.  Indeed, Ms. Lott only testified to the records she brought from Verizon.  Further, unlike Mr. Mouse, she did not testify as to how a cell phone works, or how a cell phone tower would trace a signal.

Appellant's fourth assignment of error is without merit.

(Doc. 7, RX 33, at 20-24; *Perry*, 2012 WL 5195814, at *10-*12.)

25

The respondent argues that the third ground of the petition is non-cognizable, because the admissibility of evidence is a state law issue, and alleged errors that do not violate a specific constitutional right are not cognizable on habeas review.  (Doc. 7, at 35, citing *Milione v. Camp*, 22 F.3d 693, 702 (6th Cir. 1994); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993); and other cases.)

The "clearly established rule" is that alleged errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not generally within the purview of a federal habeas court.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  *See also Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 540 U.S. 930 (2003).  This court must presume that the Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings.  *Small v. Brigano,* No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

Alleged state court errors of evidentiary rulings do not rise to the level of constitutional claims warranting habeas relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007).  *See also Bugh*, 329 F.3d at 512.  Courts have defined the category of errors that are fundamentally unfair very narrowly.  *Bugh*, 329 F.3d at 512.  "State-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the

26

traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).)  Perry has not made the case that his claim fits within this narrow category.  *See generally* doc. 9, at 9-11.

The petition should not be granted on the basis of the third ground.


## VI.  SENTENCING

The fourth ground of the petition is "The trial court erred by sentencing petitioner to a term of imprisonment contrary to statute when the findings were not supported by the record."  In his Traverse, Perry concedes that this ground has been procedurally defaulted, through a failure to fairly present the claim to the state high court.  Perry abandons the fourth ground.  (Doc. 9, at 13.)


## RECOMMENDATION

For the reasons set forth above, the petition for a writ of habeas corpus should be denied.


Dated:   Sept. 15, 2016                   /s/ Kenneth S. McHargh
                                          Kenneth S. McHargh
                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's

order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).